UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Frank M Peck,

          Plaintiff

v.

Michael Minev, et al.,

          Defendants

Case No. 2:21-cv-01865-CDS-EJY

**Order Denying Plaintiff's Motion to Withdraw from Settlement Agreement**

[ECF No. 30]

    Incarcerated pro se plaintiff Frank Peck brings this motion to withdraw from a settlement agreement, alleging multiple reasons as to why the contract should be voided, including lack of capacity, unilateral mistake, and lack of representation. Because I find that the settlement agreement is an enforceable contract, I deny Peck's motion and direct the parties to either file settlement documents or a status report within 30 days of entry of this order detailing the reasons why the settlement documents have not been filed.

    Peck is incarcerated at High Desert State Prison, where the events underlying this suit occurred. Am. Compl., ECF No. 17 at 1. Peck brings several constitutional claims against the defendants stemming from allegedly inadequate medical care. *Id.* at 5–15. United States Magistrate Judge Elayna J. Youchah referred this case to the Inmate Early Mediation Program and appointed Kathleen L. Bergquist to preside over the mediation. ECF No. 21 at 1. On July 1, 2022, the parties attended the mediation session and allegedly reached a settlement agreement. ECF No. 22. The court ordered the parties to submit the settlement documents by August 1, 2022, then extended the deadline to August 30, 2022, after the defendants filed a motion to continue. ECF Nos. 22, 25. Peck now moves to withdraw from the settlement agreement, and

this court liberally construes[1] his motion as supported by three main reasons: (1) he lacked capacity to contract because he was in pain on the date of the mediation, (2) the agreement did not include a term he alleges he requested, and (3) he did not have legal counsel representing him at the mediation. ECF No. 30 at 2–3. Defendants oppose Peck's motion to withdraw and attach the settlement agreement to their response. Resp., ECF No. 32 at 1; Agreement, Ex. A, ECF No. 32-1.

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). Under Nevada law, a settlement agreement's construction and enforcement are governed by the principles of contract law. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). So the parties must show there was an offer and acceptance, a meeting of the minds, and consideration. *Id*. "A meeting of the minds exists when the parties have agreed upon the contract's essential terms." *Certified Fire Protection, Inc. v. Precision Constr., Inc.*, 283 P.3d 250, 255 (Nev. 2012) (citation omitted). Consideration requires something that is "bargained for and given in exchange for an act or promise." *Zhang v. Eighth Judicial Dist. Ct.*, 103 P.3d 20, 24 n. 11 (Nev. 2004), *abrogated on other grounds by Buzz Stew, LLC v. City of North Las Vegas*, 181 P.3d 670 (Nev. 2008).

Here, the essential terms of the settlement agreement were laid out on paper and signed by both the plaintiff, Frank Peck, and the representative for the defendants, Jeremy Bean. ECF No. 32-1. This indicates that there was an offer and acceptance. In exchange for Peck dismissing his claims with prejudice, NDOC and the Office of the Attorney General of Nevada (OAG) agreed to the following conditions: (1) NDOC will ensure an expediated medical examination for Peck's specific medical concerns radiating from his right side, (2) the OAG will investigate a payment Peck made in error to the District Court for the District of Nevada and attempt to have the money refunded, (3) the OAG will make an effort to refund Peck $66 for an unspecified

---

[1] "A document filed pro se is 'to be liberally construed[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

medical event that occurred approximately two years prior to July 1, 2022, and (4) the OAG will investigate whether Peck was charged a second amount of $66 for another medical event that occurred approximately one week prior to July 1, 2022, and if he was, to refund that amount as well. *Id.* at 2–3. This exchange demonstrates that there was consideration in the settlement agreement. Finally, because both parties signed the settlement agreement after negotiating the terms of the agreement together on Zoom on July 1, 2022, a meeting of the minds occurred. Therefore, as the settlement agreement reveals an offer, acceptance, meeting of the minds, and consideration, I find it to be enforceable.

        a.     *Peck fails to establish lack of capacity.*

Peck argues that the settlement agreement should be voided because he "was not in sound mind and signed out of desperation for immediate treatment for pain[.]" ECF No. 30 at 3. I interpret Peck's assertion to amount to a defense claiming lack of capacity to contract.

Nevada relies on the Second Restatement of Contracts and the Corpus Juris Secundum when assessing a lack of capacity defense. *See Gen. Motors v. Jackson*, 900 P.2d 345, 349 (Nev. 1995). Under the Second Restatement, a natural person who manifests assent to a transaction has full legal capacity to incur contractual duties unless he is: (1) under guardianship, (2) an infant, (3) mentally ill or defective, (4) intoxicated. *Id.* (citing Restatement (Second) of Contracts § 12 (1981)). According to the Corpus Juris Secundum, a lack of capacity occurs when "one of the parties, for any reason, is incapable of understanding the force and effect of the alleged agreement, there is no contract; but mere mental weakness falling short of such incapacity will not invalidate a contract." *Id.* (citing 17 C.J.S. Contracts § 133(1)(a) (1963)). Furthermore, "[w]here a person possesses sufficient mental capacity to understand the nature of the transaction and is left to exercise his own free will, his contract will not be invalidated because he was of a lesser degree of intelligence than his co-contractor, because he was fearful, worried or nervous, or lacked ability to concentrate []." *Id.* (citing 17 C.J.S. Contracts § 133(1)(a) (1963)).

Simply put, "[c]apacity involves whether [the party] had the ability to understand the agreement." *Id.*

Peck fails to establish that he could not understand the agreement that he signed. Peck argues that he was not of sound mind when he signed the settlement agreement, but Nevada law requires him to prove that he was unable to understand the terms of the agreement. *See id*. But despite Peck's current claim that he was desperate to sign the agreement because of his pain, Peck negotiated the clear terms of his agreement with the defendants during the July 1 mediation conference for multiple hours. He also has not demonstrated how that pain prevented him from possessing the ability to understand the terms of the settlement agreement or the nature of the transaction. Even if he did, his contention is likely still insufficient to void the settlement agreement. *See e.g., Bland v. Badger*, 2020 WL 508874, at *4 (E.D. Cal. Jan. 31, 2020), *report and recommendation adopted*, 2020 WL 4193518 (E.D. Cal. July 21, 2020) (applying California law but finding that plaintiff's allegedly excruciating pain was insufficient to demonstrate that plaintiff was of unsound mind when entering into settlement agreement). Peck states that he wanted to see his test results before settling his case. ECF No. 30 at 2. This indicates that he understood the nature of the transaction: once he signed that agreement, he would not be able to further his claims against the defendants. Yet he signed the agreement anyway. Peck's buyer's remorse is not a sufficient reason to void the settlement agreement. Buyer's remorse is not grounds for finding the settlement agreement unenforceable. *See, e.g., Khadavi v. Stalgi, Inc.*, 2021 WL 929099, at *7 (C.D. Cal. Mar. 10, 2021) (applying California law) ("Plaintiff's allegation that the settlement agreement was 'not fairly made,' without more, merely indicates buyer's remorse, which does not constitute a basis for rescinding a settlement agreement.").

Peck does not establish that his pain rendered him so unable to understand the terms of the agreement that he was unfit to contract. Nor does Peck allege that at the time he signed the settlement agreement he was unable to understand the agreement. Because Peck had the ability

to understand the agreement, I conclude that Peck is unable to void the settlement agreement due to lack of capacity.

   b.  *Peck fails to establish a unilateral mistake defense for the settlement agreement.*

  Peck argues his settlement agreement is voidable because "the issue of 'Healthful Diet' [] did not find [its] way into the agreement [and I] did not notice at the time." ECF No. 30 at 3. I interpret Peck's assertion to amount to a unilateral mistake defense. "[A] unilateral mistake occurs when one party makes a mistake as to a basic assumption of the contract, that party does not bear the risk of mistake, and the other party has reason to know of the mistake or caused it." *In re Irrevocable Tr. Agreement of 1979*, 331 P.3d 881, 885 (Nev. 2014). A unilateral mistake "may allow a party to a contract to obtain relief from that agreement." *Id.*

  Here, Peck cannot establish a defense for unilateral mistake as he bore the risk of the mistake and he fails to allege that the defendants knew of the mistake or caused it. Peck stood to benefit from the settlement agreement including a "healthful diet," so he needed to ensure the term was included in the agreement. But he admittedly failed to do so despite having an opportunity to read through the terms and ask questions. ECF No. 30 at 3. If Peck wanted a "healthful diet" included in the terms of the agreement, he should not have signed it. His opportunity to change the settlement agreement was at the settlement conference before he signed the settlement agreement. Furthermore, Peck does not allege that defendants caused the mistake of not including the "healthful diet" term, nor does he allege that they knew he wanted the term included but failed to do so. I therefore conclude that Peck is unable to void the settlement agreement due to a unilateral mistake.

   c.  *Peck does not have a right to legal representation at the settlement conference.*

  "Generally, a person has no right to counsel in civil actions." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citation omitted). Federal law, however, governs in forma pauperis proceedings and provides that the court may request an attorney to represent a person who cannot afford counsel. 28 U.S.C. § 1915(e)(1). Such an appointment is within the court's

5

discretion but should only be done when "exceptional circumstances" are present. *Palmer*, 560 F.3d at 970 (citation omitted); *Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)). In determining whether these circumstances exist, "a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.'" *Palmer*, 560 F.3d at 970 (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)); *Agyeman*, 390 F.3d at 1103. "Neither of these considerations is dispositive and instead must be viewed together." *Palmer*, 560 F.3d at 970 (citation omitted).

Nonetheless, the time for Peck to request counsel was *before* he agreed to attend mediation as an unrepresented litigant and *before* he signed the settlement agreement that was a product of that mediation. Peck lists no authority, and I too can find none, requiring the appointment of counsel for a civil litigant who represented themselves at a mediation. While 28 U.S.C. § 1915 provides for the possibility of an attorney being appointed to represent Peck, he never requested that the court exercise its discretion to do so. Therefore, I conclude that Peck's lack of representation at the Early Medication Conference is insufficient to void the settlement agreement.

IT IS THEREFORE ORDERED that the plaintiff's motion to withdraw from the settlement agreement [ECF No. 30] is DENIED.

IT IS FURTHER ORDERED that the parties are to file the executed settlement documents within 30 days of today. If the parties are unable to file the executed settlement agreement within 30 days, the parties must file a joint status report within thirty days of this order detailing the reasons the documents have not been filed as ordered herein.

DATED: April 19, 2023

_____
Cristina D. Silva
United States District Judge